Okay, Mr. Butler, yes, your honor, Lynn Butler on behalf of the Port of Corpus Christi. Today, we're here on three points on appeal, but your honors, the primary point that has to be or should be reviewed first is whether or not the bankruptcy court invaded the Port of Corpus Christi's sovereignty by effectively wiping out and extinguishing the port's easement. The other two points have to do with whether or not the court had, if the bankruptcy court had the jurisdiction that it asserted, then the adequacy of the pleading under 1144 of and the abuse of discretion of whether or not it should have been amended would come into play. Your honor, there are several facts that should be looked at in order to frame this issue. One, the port is a state sovereign, it's an arm of the state of Texas. This court has held twice that the port holds that status. Two, the road easement up until the point in time the confirmation order was signed was indisputably the property of the Port of Corpus Christi. Three... It's a non-possessory interest. Yes, sir. It's a property right. It's a non-possessory interest, a property right, and the ability to utilize the road at its lesion. It was a property right that was established by agreement with the debtors back in 2013, but actually it was reaffirmation of an easement that existed since the 1920s. Just curiously, factually, why when you bid, did you seek to get access to an easement if you already had it? Actually, the bid required that the easement remain in place. The bid, though, your honor, when the Port of Corpus Christi was bidding, it was only the ocean line. It wasn't bidding for that part of the land that was ultimately sold post-confirmation. But your honor, the bankruptcy court squarely relied on what it perceived to be its in-room jurisdiction in order to effectuate this extinguishment of the port's easement. The problem, your honor, is that the in-room jurisdiction, as developed by the Texas Supreme Court, has never been extended past the debtor's property. In this case, by issuing the confirmation order, the bankruptcy court effectively is invading the sovereignty of the Port of Corpus Christi by taking away its property right. Prior to 2004, the Supreme Court in Seminole Tribe v. Florida had looked at the bankruptcy powers from the perspective of Article I v. Eleventh Amendment. In 2004, the Supreme Court came down with Tennessee v. Hood, where it articulated that the bankruptcy court had in-room jurisdiction, but again, only over property of the debtor. That Hood decision has not been extended into property of the state sovereign. Your honor? In your best circuit authority for that, I would have said that Hood would cover this all square. The circuit authority, actually it's the reverse, your honor. There is no, it hasn't been extended. There is no case law that takes Hood and extends it into the state sovereignty area. You'd have to establish that even though it goes with the property, sounds like in-rem, it's not the person, it's not the state of Texas. It's adjudicating the property as to anybody and everybody. That just seems to me, what's this situation? The distinction, your honor, is that in Texas, a Texas easement is the separate property right of the easement holder. And if you look at Bankruptcy Code 363-F, which is the statute by which you actually sell property, it talks about interest in the debtor's property. This is separate property all the way around. There are no cases, your honor, there are no published federal cases that we found that allowed an easement, whether the easement of a state sovereign or a private owner, being stripped under the laws of the state of Texas using the Bankruptcy Code sale provision. You would think, your honor, from the, the statute. I mean, that intrigues me, but that's a 363 objection. Yes, your honor. It is a 363 objection. I mean, I really read the record closely and your complaint only tucks that 363 into the fraud count, then it doesn't even appear in the district court, it's not in your principal brief, so they end up in their reply brief mentioning 363 once. Then it gets fleshed out in the reply brief, but you may have a 363 argument, but it's not been asserted and it isn't being asserted now. Well, and I'll tell you why I don't think we do. A 363 argument would have been an objection to the actual confirmation hearing. That would be a direct appeal. In our view, the collateral attack on that order would have been raising it out of time. The, that's the only avenue that the bankruptcy court allows a creditor or a party in interest to actually assert post-finality on a bankruptcy confirmation order is 1144. That was the vehicle at the same time within that complaint we're able to assert the court's 11th amendment rights or sovereignty rights against the bankruptcy court from taking the action that it did through the confirmation order. So from that perspective, your honor, the, well, let me put it this way. Even if that plan, the front page said under 363, we are going to extinguish the port's easement. Even if it was that bold, it would make no difference because the court failed to have the requisite jurisdiction to impact the state's property. That's where the, the, the lines of cases from Tennessee v. Hood, and then the Supreme Court once again in 2006 in the Katz case by expanding what the 11th amendment analysis should be. And the important thing about Katz is to keep in mind it's very specific to preference claims. But what has changed though is how these courts are supposed to review and look at the, the, the parameters of 11th amendment immunity. That takes us to the historical reviews, both in the NREM and also in the, the quiet title cases. In my view, probably the quiet title cases that have been, that have been discussed by this court in, in several cases, Isidro del Sur Pueblo-Vilaini and the Kennedy Foundation v. Gary Morrow, the, the federal courts have stated that the federal court jurisdiction will not allow the quiet, a quiet title action against the state. It will not allow a lawsuit that effectively rules that the state is no longer the owner of a piece of property. If you look at the historical context that Katz would have someone look at by going back to 1787 and trying to figure out what the states thought they were doing by joining, by signing the Constitution, you can also look at Hans v. Louisiana, Supreme Court case from 1893, and that was the, the attempt by a private citizen to sue on a contract against the state. There though, similar to what happened in Katz, there was a reference back to one of the, they didn't use this word, but it would be fairly repugnant to the states to think that a private citizen could sue it on its property rights, in that case, a contract right. But that's all outside the context of the Bankruptcy Code, right, which has been treated distinctly throughout. And the proposition you're urging, but you're saying there's no case, is, I mean, government entities do control easements over all sorts of property. Correct. So if your proposition is right, is that there's always 11th Amendment immunity, there would not be an efficient, uniform Bankruptcy Code. I disagree, Your Honor, and the reason is, is this, the in-rim jurisdiction that has been espoused by the Supreme Court has always been limited to property of the debtor. In order for your supposition to come true, the in-rim jurisdiction would necessarily have to include property of the state sovereign. Keep in mind, bankruptcy in-rim jurisdiction is an exception to 11th Amendment immunity. In order for that to occur, you would think that there would be some indication in the 200 years of the development of 11th Amendment jurisprudence that has allowed the federal court to impact the property right of the state. And again, when you meld, if you improperly, in my view, as the bankruptcy court did, meld the property right that's evidenced by the easement with the surface rights of the debtor and make that an interest within the debtor's property, it doesn't work, Your Honor. It's not appropriate legally. Those are two separate areas, two separate property rights. That's why, and if you base it upon the Supreme Court's Hood and Katz case, how they refer back to how the admiralty in-rim cases are and how they've developed, you look at New York 2. New York 2 is, other than the fact that it's a, the raise is a boat, but the boat belonged to the state of New York. Supreme Court said and has continued to hold that the federal court, using its admiralty in-rim power, which both opinions say equate fairly well to bankruptcy in-rim power, in-rim jurisdiction, that the New York 2 says that the federal court could not make, affect New York's ownership of a boat that it kept. If Hood does control the situation, what's your next argument? If Hood controls the situation, whether or not, well, is it... It's a right to be an encumbrance on the debtor's property. It's a non-possessory interest, and therefore it is within the orbit of bankruptcy. Do you have a secondary argument? If you make the assumption that the raise that's discussed in Hood would encompass a non-possessory interest, at that point in time, you would go to the 1144, because you've effectively... You've made these arguments in your brief, and your time's running out, I guess. I'm sorry. Yes. The Bankruptcy Court didn't think it had had a misrepresentation that was material made to it, but you want to say that it did. Yes, Your Honor, and this is what's important. This should have been reviewed under Rule 9B and Rule 12. Instead, the Bankruptcy Court effectively tried the case based on its own perception of what may have happened at confirmation. As this Court has stated in the Davis Offshore case, when it talks about... In the footnote, it talks about whether or not you could use equitable mootness in 1144. I think the critical point is that the fraud rarely occurs in front of the court. And it's our position that it was an improper review of the pleading itself, which should have been looked at from the four corners, and whether or not it alleged enough allegations, enough facts, that when viewed in light most favorable to the court, would have established a claim in 1144. Okay, and the specific affirmative misrepresentation was what, or was it a nondisclosure of a material fact? It was both. The misrepresentation, the overt misrepresentation was the testimony of debtor counsel to the court. We've done a lot of changes. Nothing material has changed, which is false. It's false from the day before until 1213 that morning. The omission would be not disclosing to the court that the plan had changed in such a manner that the court should be notified that a substantive right of a third party, who's not present before the court, has been impacted. As a bankruptcy attorney, that's our obligation through disclosure. So the combination of those two at the confirmation hearing is what effectively kicks in, and of course the due process claim is implicated, but that's still before the trial court. That's been stayed pending this appeal. And then finally, Your Honor, on the abuse of discretion, it dovetails into the court's explanation of, I was around here. I don't see that there was enough fraud. If the court saw that aspects of the complaint were defective or unsubstantial to make 1144, case law suggests that the ability to amend should be given to the plaintiff. The futility argument, which I understand, it had no backing behind it for us at the court to understand, okay, if it's futile, why? Well, the only answer to that question is that the court was using its own personal perception of what happened at trial in another proceeding to evaluate the complaint, and that we believe is an improper approach to reviewing. Any other? Thank you. Thank you. Thank you. Ms. Murphy. Good morning, Your Honors, and may it please the court. Erin Murphy on behalf of the appellees. The Bankruptcy Court correctly rejected the court's collateral attacks on the debtor's substantially consummated plan. First, the court's 11th Amendment immunity claim fails as a matter of law under the Supreme Court's decisions in Hood and Katz, which concluded that states did not retain sovereign immunity with respect to proceedings necessary to effectuate the in-rem jurisdiction of the bankruptcy courts. A 363 sale of property of the estate, which is what we're talking about here, real property that belonged to the estate, is a classic in-rem proceeding that falls squarely within the jurisdiction of bankruptcy courts, so the court did not have any 11th Amendment immunity to assert. And as to the second claim here, the court's fraud claim fails as a matter of law based on its own allegations in its complaint, which confirmed that the statements were neither false nor material to the confirmation of the plan. It was clear from day one of these proceedings that this property was going to be sold free and clear of all liens, claims, and encumbrances. And nothing about that default rule changed on the day of confirmation. The only thing that changed was that the plan was altered to create some exceptions to that rule for some other parties that had come forth and objected to what was going to happen under the free and clear sale. So there never was any material change. There was no falsity to any of these statements. And on the third point that the bankruptcy court certainly did not abuse its discretion by denying leave to amend here, when the court has still to this day never come forward with anything that they could plead that would change the fact that these claims just fail as a matter of law based on settled precedent and based on their own allegations about what happened in these proceedings. If I could start by talking a little bit more about the 11th Amendment issue here, really after the Supreme Court's decisions in Hood and Katz, it's just well established. I mean, the basic principle is at least as to in rem proceedings and proceedings necessary to effectuate in rem proceedings, states get treated just like anyone else. They didn't retain any sovereign immunity. And even to the extent they did, I mean, this court had held pre-Katz in its Texas versus Walker decision, then when it comes to in rem proceedings about what to do with the property of the estate, there's not an 11th Amendment issue in the first place because the state's not being hailed into court. And if you look at Katz and Hood, I mean, they rely heavily on the Supreme Court's earlier decision in the Deep Sea Research case dealing with the in rem jurisdiction of admiralty courts. And what the court said there was it is fine in the context of an in rem proceeding for a court to adjudicate interests in the property, the res that's before it, even if that affects or extinguishes interests of the state. The only distinction the court drew in Deep Sea Research was if the property is physically in the possession of the state such that the in rem court is saying, you know, I'm going to issue a coercive order and require the state to turn over property that's in its possession. Here, what we have is physical real property that everyone agrees was the property of the estate. What they had in that property is an easement, an interest, a non-possessory interest to use somebody else's physical real property. This wasn't even an exclusive easement, you know, it's just a right for them to use property that belonged to the estate. So the bankruptcy court was acting well within its jurisdiction in adjudicating interests in that property of the state. Now, you know, they've raised some interesting questions about whether this particular sale of an easement would have been, would have satisfied various 363F factors had they objected at the time of the sale. But I think counsel correctly concedes, you know, those issues are not before this court and they cannot be before this court because this court is precluded from hearing collateral attacks on a confirmed bankruptcy plan as well as collateral attacks on a 363 sale. And so they, you know, they basically tried to come up with these fraud and Eleventh Amendment arguments because that's the only way they have to try and get in arguments that if anybody else were raising them would clearly just be foreclosed by general principles precluding collateral attacks on consummated bankruptcy plans and consummated 363 sales. Well, again, you both understand this area of law better, but when, just, this may be very naive, but when would the third party be able to object for lack of notice, no consent, no dispute? When would the 363 factors happen? Well, so here in this case, I mean, you know, they had notice. So they could have objected at any point during the bankruptcy proceedings. I guess what their argument there is when you look at the whole chronology, the notice was very nonspecific. It was these properties are excluded from this deal. These are carried forward or whatever, preserved encumbrances. And never a specific notice to them about you're going to lose something that you've always had. Yeah, and I think that there's a couple of problems with that argument. I mean, first of all, several other parties came to the debtors and said, you know, hey, we've got an easement, and we're reading this same plan, and we're reading all these same documents, and we understand that when you're saying that the property's going to be sold free and clear of all liens, claims, and encumbrances, that's going to reach our easement. And those, what happened is then negotiations occurred. You know, some of them raised 363 issues. That's where this paragraph 108 in the confirmation order came from. That was the product of negotiated resolutions about precisely the types of issues. So again, if Texas had come then and said we've got an indisputable easement, 363 would attach. Well, they could have made arguments that they, at that point, I mean, one of the conditions that's important to recognize under 363-F is there is one of the ways a bankruptcy court can sell free and clear is with consent. Yes. And there is case law that has been, that has concluded that if you never object and you have noticed, you've consented. And I would note, I do think it's worth taking a look at tab 5 of our record excerpts has the port's own proposed confirmation order in this case. So when they submitted a bid to purchase this property, they submitted a proposed confirmation order that they would have had the bankruptcy court enter. And in their own confirmation order, they proposed that the property be sold to them free and clear of easements. And they said that it could be sold to them free and clear of everybody else's easements by relying on 363-F2 and the principle that if you have notice of the free and clear sale and don't object, you're deemed to consent. So, you know, so if they had come forward and said we don't consent, then we would have had to confront other factors under 363-F. We could have, you know, either negotiated or they could have litigated these issues. It was a case, in your mind, of inattention. Yeah. I mean, exactly. They had this information. They could have come forward at any time. That might have changed things. It might have led to litigation. Who knows how things would have played out. But the fact that they kind of realized after the fact, oops, we didn't think our easement was going away, I mean, none of that, you know, gets them out of a waiver problem. But more fundamentally, I mean, they are here on a sovereign immunity claim and I don't see how any of this has anything to do with the 11th Amendment because their argument is not, you know, that there's some special rule. I mean, they're making this argument, but I think it's foreclosed squarely by Supreme Court precedent that there's some special rule under 363-F that, you know, everybody else's property can be sold but not a state's. They're basically saying, you know, nobody's easement can be sold and then saying since we happen to be a state actor, for us we get to convert a statutory argument into an 11th Amendment argument. And I don't really think that's an appropriate way to use sovereign immunity. It would essentially mean that states can kind of raise forever issues that anybody else would have had to raise that are just straight statutory arguments, not arguments about the unique role of courts when it comes to adjudicating the interests of states. So, I mean, they certainly do, you know, make an argument that they think courts are wholly without the power to adjudicate the interests of states and property. But Deep Sea Research, Hood, Katz, all of those cases foreclose that argument. I mean, in Deep Sea Research, the state was asserting title to the property that was before the Admiralty Court and the Supreme Court said, that's OK. The Admiralty Court can still adjudicate whether the state has title. And I certainly don't think the state in Katz was conceding that they had gotten an impermissible preferential transfer. I mean, I'm sure they wanted to object to that. So they didn't agree with the notion that the money that was going to go back to the estate was the property of the estate and the court was saying it's OK for the courts to adjudicate that. So ultimately, you know, I think to the extent they have any arguments they've raised here that are interesting, most of which, as I think Your Honour correctly noted, come in their reply brief, those just aren't within the scope of the issues that are before this court at this time. The 11th Amendment claim just fails on its own terms. Turning to the fraud claim, I think that the basic problem there is really derivative of what I've already said, which is it was clear from day one. I mean, from the very first documents that were proposed in this case, the motion to have a 363 sale, the original asset purchase agreement, the original plan, they all said that the property was going to be sold free and clear of all liens, claims and encumbrances. And numerous iterations of the plan said it would be sold free and clear of everything except for the permitted liens and then eventually the language became permitted encumbrances. And basically what happened was that term wasn't defined up until the very last document in the plan, which was the confirmation order. And the confirmation order came out and included this paragraph 108 that finally defined the term permitted encumbrances and explained which properties, encumbrance pieces, what liens, claims and encumbrances were going to be an exception to this general rule of everything else is going to be extinguished. So when counsel represented the bankruptcy court that there hadn't been a material change, I mean, that's absolutely correct. And particularly, at least as the only thing that matters here, which is their easement, their easement was always going to be extinguished. Nothing changed about that in the final documents. And the fact that they realized that some other people got an exception, you know, that doesn't amount to any sort of material change in their treatment and none of this comes anywhere close to making the statements that they identify that were made to the bankruptcy court false or fraudulent or intentionally designed to mislead anybody. And I take their point, you know, to be that they think that the bankruptcy court kind of went beyond its role here and took into account what was going on. I mean, to me, these claims, as the district court correctly recognized, just fail on the face of the complaint. I mean, they pled all of the various iterations of the plan, the various iterations of the asset purchase agreements. If you walk through their own allegations, explain that repeatedly for well over a year, the plan said free and clear of all liens, claims and encumbrances. So, you know, it's not a matter. I mean, I think the bankruptcy court correctly did recognize that it was the actor that they were saying was defrauded and it did not believe it had been defrauded or that any of this was material. But wholly apart from that, just looking at the complaint, the allegations just do not come anywhere close to the level you would need to be. You endorse fully the senior judge's six-page analysis of this? The district court does? Yes. I think the analysis on the 12B6 issue as to fraud is absolutely right. And what the court said is, you know, as to fraud, that there just was no fraud because you can look at this and understand that, you know, I mean, what maybe they didn't understand what was going on, but that doesn't amount to, you know, this being fraud and nobody ever understanding and there being a material change in the treatment of their claims. So, you know, so to the extent they have some objection about the notion of the sort of admittedly unusual procedure that you're always going to have in a bankruptcy case where the very judge that they're saying was defrauded is the one that they're asking to look at the claim, I mean, I think it's understandably difficult for a judge to put out of their mind the notion of, well, I kind of know if I was defrauded or not. But here, the fact that this also was appealed and the district court re-examined the same conclusion, I think just gives all the comfort necessary to, you know, not be concerned that there was anything procedurally unusual about the way that this was done. And then on the final point, I simply don't see what leave to amend, you know, would achieve here. I mean, they have never explained what they think they would plead and I don't think they can plead anything because the basic theory of their fraud claim is what fails as a matter of law just by looking at the undisputed facts of these proceedings because they just can't change the fact that there never was any material change in the treatment of their plan on this final day and with the final plan documents. Unless the court has any questions, we ask you to affirm the case. Thank you. Mr. Butler? Save time for Butler? Yes, Your Honor. One of the assumptions Judge Higginson, I think, you're making on the 363 is that 363 only comes into play if the bankruptcy court has jurisdiction and whether the state sovereign has a claim or a lien on property of the debtor. What's noticeably absent in Apley's brief is there is no case law ever using 363F to strip out easements created under Texas law. There's no support for it because it's a separate property right or you would have seen these cases given all the pipelines and roads and other classical easements throughout the state of Texas, you would have seen some authority. That's whether or not it's a state sovereign or not. In our case, though, when you add the lack of the use of 363F to take away a third party's property right, but you overlay the special nature that the state has of the ability to stay away and protect itself by not engaging in the federal court's jurisdiction. That the Fifth Circuit has, through Isidro del Sur and through Gary Morrow, they continually have said that this court does not have, that the federal court does not have the jurisdiction to rule on property in which the state has a colorable claim. And that's one of the differences between both treasure salvers and Deep Sea, which both of those, there was no colorable claim the courts found to the property. It's undisputed that the easement was the property right, again a non-possessory property right, but the property right of the Port of Corpus Christi. It had the ability, whether it was given notice or not, which I will say to you, your honor, the description by the debtors of what occurred is patently false. If you look at how the pleadings were set out, at 930 at night the night before, they finally file a list of excluded assets, the court's not on there. 1213, the confirmation order that's entered has a one sentence that nowhere does it appear anywhere in the multiple versions in which the port's easement is stripped away. But that addition, again, depends upon the bankruptcy court having the jurisdiction to effectuate that provision. And if it doesn't have the jurisdiction, then whether or not the port objected or not makes no difference. It didn't have to object. The only way it would have objected, would have had, the only point where it would be necessary for the port to object, would if it had a claim or a lien or something against the piece of property that belonged to the debtor. And the, let me go one, oh, and then the other point, your honor, the, if hood and cats are read to expand the raise that a bankruptcy court has jurisdiction over, there would be, again, some case law in the last 14 years that would show that expansion, and there just isn't any. And cats, quite frankly, is very narrowly focused on preference claims, which again, going back historically, were causes of action that the states understood existed back when they signed on to the Constitution. And if the court has any other further questions. All right, thank you, Mr. Butler. Your case and all of today's cases are under submission. Thank you, your honor. Court is in recess until 9 o'clock tomorrow.